In re BARNEY'S, INC., et al., Debtors.

BARNEY'S INC. and Preen
Realty, Inc., Plaintiffs,

v.

ISETAN COMPANY LIMITED, Isetan of
America Inc., Calireen Realty Corp.,
Newireen Associates, and Rush Oak
Limited Partnership, Defendants.

Bankruptcy Nos. 96 B 40113 (JLG)
to 96 B 40133 (JLG).
Adv. No. 96–8021A.

United States Bankruptcy Court,
S.D. New York.

Sept. 24, 1996.

LeBoeuf, Lamb, Greene & MacRae L.L.P., New York City, for Debtors.

Hughes, Hubbard & Reed, New York City, for Isetan of America, Inc., et al.

Stroock & Stroock & Lavan, New York City, for Creditors' Committee.

### MEMORANDUM DECISION ON DEBTORS' APPLICATION FOR ORDER PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE ENJOINING STATE COURT PROCEEDING FILED BY ISETAN OF AMERICA, INC.

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Barney's Inc. ("Barneys") and Preen Realty, Inc. ("Preen" and collectively, the "plaintiffs") move for an order under § 105(a) of the Bankruptcy Code enjoining until the conclusion of their jointly administered chapter 11 cases a lawsuit (the "State Court Action") by Isetan of America Inc. ("IOA") in New York State Supreme Court, New York County (the "State Court"), against Robert L. Pressman and Eugene Pressman (collectively, the "Pressmans") to enforce certain personal guarantees executed by each of them for IOA's benefit. IOA opposes the motion and requests that we impose sanctions on plaintiffs' counsel under Rule 9011 of the Federal Rules of Bankruptcy Procedure. We deny the motion without prejudice and deny IOA's request for sanctions.

#### Facts

The facts are not in dispute. On January 10, 1996, Barneys and each of its six subsidiaries and Preen and each of its 13 subsidiaries (collectively, the "debtors") filed separate petitions for relief under chapter 11 of the Bankruptcy Code in this district. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code debtors are operating their businesses and managing their properties as debtors in possession. An official committee of unsecured creditors was appointed on January 23, 1996.

Barneys is a New York corporation that directly and through subsidiaries operates several upscale men and women's stores and outlet stores. It is owned and managed by the family of the late Barney Pressman either directly or through trusts established for their benefit, or through Preen, whose stock is wholly owned by Pressman family trusts.

Isetan Company Limited ("Isetan") is a Japanese corporation operating a chain of high quality retail department stores in Japan. IOA is its wholly owned U.S. subsidiary. In late 1988, Goldman Sachs approached Isetan about investing in Barney's America, Inc., a Barneys subsidiary. Over the next several years, Isetan and related entities had miscellaneous dealings with Barneys, Preen and related entities. Barneys and Isetan disagree on the nature of their relationship resulting from those dealings. That dispute is central to this adversary proceeding which plaintiffs commenced the day after debtors filed their chapter 11 cases and which is the predicate for this § 105 motion. In their complaint (the "Bankruptcy Complaint"), plaintiffs seek:

1. enforcement of an alleged understanding and agreement between Barneys and Isetan that certain joint business projects undertaken by plaintiffs and defendants would be restructured into a single global retailing company (the "Barneys/Isetan Global Partnership") in which Isetan and the present owners of Barneys would share the equity ownership;

2. a determination that the three real properties housing new Barneys stores in New York, Chicago and Beverly Hills and the improvements at those locations, which are held in the names of defendants Newireen Associates ("Newireen"), Rush Oak Limited Partnership and Calireen Realty Corp. and which were constructed in part with the financing provided by Isetan, were intended to be equity contributions by Isetan to Barneys, and are the property of Barneys;

3. a judicial evaluation of the market value of the three properties so Isetan may receive an appropriate equity interest in the reorganized debtors;

4. a determination that certain leases by Barneys for the three stores are not true leases, but instead are impermissible and unenforceable mechanisms by which Isetan seeks to realize a preferred return, at the expense of Barneys' creditors, on its equity investment in the Barneys/Isetan Global Partnership;

5. a recovery for the benefit of Barneys' estate of approximately $50 million paid to Isetan and allegedly constituting preferred equity returns to Isetan; and

6. a determination that approximately $177 million purportedly lent by Isetan and IOA to Preen (the "Preen Loans"), but allegedly was used to complete construction of the New York, Chicago and Beverly Hills stores, is part of defendants' equity contribution to the Barneys/Isetan Global Partnership, and not an enforceable loan to Preen, Barneys or any of their affiliates.

Without limitation, defendants' answer to the Bankruptcy Complaint denies that the Barneys/Isetan Global Partnership exists, or that the parties contemplated such a relationship. Their counterclaims include allegations that they are the lessors of the Chicago, Beverly Hills and New York stores, and that Barneys, Madneer Corp. and Barneys America Inc. are their tenants. Defendants seek a declaration that certain collateral security agreements given in connection with the Preen Loans are valid and enforceable and that they were induced to make the Preen Loans by, among other things, the Pressmans' representations and their personal guarantees.

The Pressmans each executed personal guarantees (the "Personal Guarantees") in favor of IOA guaranteeing payment of approximately $165 million of the Preen Loans, plus interest, attorneys' fees and other costs and expenses. Those documents reveal the following:

(a) Each Personal Guarantee is unconditional and jointly and severally obligates the Pressmans to make "due and punctual payment to [IOA] of the full amount of the principal and interest due under" each loan "without right of set off or counterclaim." Personal Guarantees §§ 2.1 and 6.2.

(b) Payments on the Personal Guarantees are due immediately upon notice from IOA of Preen's default under the Preen Loans and specifying the amount due from the Pressmans. *Id.* § 2.1.

(c) The obligations, covenants, agreements and duties of the Pressmans, as guarantors "shall in no way be released, diminished, reduced, affected or impaired" by "any invalidity of, or defect or deficiency in, any of the [documents evidencing the Preen Loans], or any related papers, to the fullest extent permitted by law, including without limitation the unenforceability of any or all of the provisions of any of [those documents]." *Id.* § 2.4(h).

(d) The obligations and agreements of the Pressmans, as guarantors, shall "in no way be released, diminished, reduced, affected or impaired" by the settlement, compromise, modification or rearrangement of the obligations under the Preen Loans, *id.* §§ 2.4(c) and 2.4(i), or by any voluntary or involuntary bankruptcy or reorganization affecting the borrowers under the Preen Loans. *Id.* § 2.4(g).

(e) The Pressmans (i) consented that their obligations under the guarantees "are, and shall be, absolute, independent and unconditional under any and all circumstances" and "are several from those of the Borrowers or any other person, and are primary obligations concerning which [each Pressman] is the principal obligor", *id.* § 2.6; (ii) waived any necessity in any action brought by IOA against the Pressmans under their Personal Guarantees for Preen or any other person or entity to be joined in such action, *id.;* and (iii) irrevocably agreed that, in any action brought in New York State or Federal Court by IOA with respect to the Personal Guarantees, all claims in such action "may be heard and determined in such court." *Id.* § 6.8.

The Pressmans' counsel opined to IOA when the Pressmans executed their guarantees of the first three Preen Loans that each guarantee is enforceable against the Pressmans.

Debtors allegedly defaulted on the Preen Loans prepetition and IOA purportedly so notified the Pressmans as required under each guarantee. The Pressmans have not honored their guarantees. On January 12, 1996, IOA commenced the State Court Action by a motion pursuant to § 3213 of the New York Civil Practice Law and Rules for summary judgment in lieu of complaint, requesting entry of judgment against the Pressmans, jointly and severally, on their guarantees.

In January 1996, debtors sought post petition financing under § 364 of the Bankruptcy Code. Isetan objected to the motion and IOA and Newireen simultaneously moved pursuant to § 365(d)(3) of the Bankruptcy Code for an order directing debtors to pay the rent accruing post petition under the New York, Chicago and Beverly Hills leases and to meet all other post petition lease obligations. Debtors and the creditors' committee opposed that motion and debtors cross moved for an order extending their time to pay alleged rent. In both instances debtors argued that they should not have to pay rent pending a determination of the merits of their Bankruptcy Complaint. Promptly after Isetan answered that complaint debtors moved for partial summary judgment that the alleged leases are not true leases. Isetan opposes that motion.

Pursuant to this Court's General Order Adopting Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings dated November 10, 1993, as amended January 17, 1995 (the "Mediation Procedures Order"), at the parties' request, we appointed Stephen H. Case, Esq. to mediate the many disputes raised in the pleadings described above. That mediation is ongoing.

This motion originally was returnable on March 28, 1996. IOA timely opposed it. The parties adjourned the motion's hearing date until April 6, 1996 and pursuant to a Stipulation and Order dated April 5, 1996, plaintiffs, defendants and the Pressmans adjourned the hearings on this motion and the State Court Action § 3213 summary judgment motion for several weeks. Those adjournments were conditioned upon the Pressmans executing, delivering to IOA, and complying with their respective Statements of Financial Affairs ("Statements"), and further providing, among other things, that at IOA's election and upon notice to the court

and counsel for the plaintiffs and Pressmans, the stay would be terminated for, among other things, a breach by either Pressman of an obligation under his Statement. The Pressmans failed to comply with certain provisions of their Statements, whereon IOA declared a default under the Stipulation and Order and requested that we conduct a hearing on this motion. Although the Pressmans concede a technical default under the stipulation, they initially opposed IOA's request arguing that the default was immaterial and did not prejudice or compromised IOA's rights under the stipulation. Ultimately they did not press their objection and we heard argument on the motion.

### Discussion

Our subject matter jurisdiction of this adversary proceeding is predicated on 28 U.S.C. § 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

■ By its terms, the automatic stay of § 362 of the Bankruptcy Code applies only to debtors. *See* 11 U.S.C. § 362; *see also Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d 61, 65 (2d Cir.1986) (generally, "stays pursuant to [11 U.S.C. § ] 362 are limited to debtors and do not encompass non-bankruptcy codefendants"). Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a). In limited circumstances, § 105(a) enables a court to enjoin a party from proceeding against non-debtor third parties. *Chase Manhattan Bank v. Third Eighty–Ninth Associates (In re Third Eighty–Ninth Associates),* 138 B.R. 144, 146 (S.D.N.Y.1992) (citing cases). Courts grant § 105(a) injunctions sparingly because they expand the scope of the § 362 stay. *Id.* (citing *University Medical Center v. American Sterilizer Co. (In re University Medical Center),* 82 B.R. 754, 755 (Bankr.E.D.Pa. 1988)).

The Pressmans advise that they will make the Barneys/Isetan relationship central to their defense of the State Court Action by arguing, among other things, that the Preen Loans are unenforceable under the Barneys/Isetan Global Partnership. Plaintiffs contend that because those matters are at issue in the Bankruptcy Complaint, we should resolve them, especially given the significance those matters hold in these cases. They argue that absent a § 105 injunction, they must intervene in the State Court Action to protect their legal positions and avoid the collateral estoppel effect from an adverse determination against the Pressmans on issues common to both litigations. They ask that we enjoin that litigation and that IOA seek relief against the Pressmans herein. Plaintiffs contend that we can maintain jurisdiction of all relevant issues and administer any litigation necessary to the debtors' reorganization in an efficient and cost-effective way to promote resolution of these chapter 11 cases.

Collateral estoppel, or issue preclusion, bars a litigant from relitigating factual or legal issues necessarily decided in an earlier litigation against a party to the earlier litigation or one in privity with it. *See* Charles Alan Wright, *The Law of Federal Courts,* § 100A at 730 (5th ed. 1994). *See, e.g., Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Metromedia Co. v. Fugazy (In re Fugazy),* 157 B.R. 761, 765 (Bankr.S.D.N.Y.1993). Collateral estoppel will apply when: (i) the subject issue in both proceedings is identical; (ii) the issue was litigated and necessarily decided; (iii) there was a full and fair opportunity to litigate in the prior proceeding; and (iv) resolution of the issue was necessary to support a valid and final judgment. *See Liona Corp., Inc. v. PCH Associates (In re PCH Associates),* 949 F.2d 585, 593 (2d Cir.1991); *First National Bank v. Overmyer (In re Overmyer),* 52 B.R. 111, 115 (Bankr.S.D.N.Y. 1985).

Courts apply § 105 of the Bankruptcy Code to enjoin litigation against non-debtors when an adverse judgment in that litigation will collaterally estop the debtor in subsequent litigation. *See, e.g., In re Lion Capital*

*Group,* 44 B.R. 690, 702–03 (Bankr.S.D.N.Y. 1984); *Johns–Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville Corp.),* 26 B.R. 420, 429–30 (Bankr.S.D.N.Y.1983), *aff'd,* 40 B.R. 219 (S.D.N.Y.1984), *rev'd in part on other grounds,* 41 B.R. 926 (S.D.N.Y.1984); *see also Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.),* 117 B.R. 64, 66–67 (S.D.N.Y.1990). IOA contends that those cases are inapposite because the State Court should not consider the enforceability of the Preen Loans or the nature of the Barneys/Isetan relationship in adjudicating the Pressmans' liability under their guarantees since they waived their rights to contest the enforceability of the Preen Loans in § 2.4(h) of the Personal Guarantees. *See Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 94–95, 495 N.Y.S.2d 309, 311, 485 N.E.2d 974, 976 (N.Y.1985) (fraud in inducement of guarantee is not defense to action on guarantee when guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of guarantee, or any other circumstance that might otherwise constitute defense available to guarantor in respect of guarantee, when those claims are inconsistent with guarantors' claim of reliance upon oral representation that lenders were committed to extend borrower additional credit line), *rearg. denied,* 67 N.Y.2d. 647, 499 N.Y.S.2d 1031, 490 N.E.2d 558 (N.Y. 1986).

Plaintiffs dispute IOA's interpretation of the Personal Guarantees and contend that *Plapinger* does not bar the State Court from considering the enforceability of the Preen Loans in adjudicating the merits of the State Court Action. We need not resolve the matter because IOA agrees not to contend in opposing the Bankruptcy Complaint that determinations in the State Court Action adverse to the Pressmans are binding on plaintiffs. Collateral estoppel is a waivable affirmative defense. *See Sinicropi v. Milone,* 915 F.2d 66, 68 (2d Cir.1990) (enforcing terms of stipulation in which employer agreed to waive affirmative defenses of res judicata and collateral estoppel to three causes of action in exchange for employee's agreement to forego appeal where employee relied on stipulation to her detriment). We

are aware of no reason the waiver would not be enforceable.

Plaintiffs argue that prosecution of the State Court Action will be a financial drain to debtors and distract the Pressmans from their responsibilities. The undisputed evidence shows that as the chairpersons and chief executive officers of Barneys, the Pressmans are the final decision makers on all corporate issues facing the debtors. Robert Pressman manages the financial, operational and administrative direction of Barneys, and aspects of its day-to-day business. Eugene Pressman oversees the creative development and direction of Barneys.

█ Under New York law, "[w]hen an action is based upon an instrument for the payment of money only or upon any judgment the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint." N.Y.Civ.Prac.L. & R. § 3213 (McKinney 1991). Thus, a plaintiff may obtain an accelerated judgment against a defendant where liability for a certain sum of money is clearly established by an instrument, coupled with proof of nonpayment. *Wagner v. Cornblum,* 36 A.D.2d 427, 428, 321 N.Y.S.2d 156, 157 (N.Y.A.D.1971) (*citing Holmes v. Allstate Ins. Co.,* 33 A.D.2d 96, 98, 305 N.Y.S.2d 563, 566 (N.Y.A.D.1969); *see also Interman Industrial Products, Ltd. v. R.S.M. Electron Power, Inc.,* 37 N.Y.2d 151, 154, 371 N.Y.S.2d 675, 679, 332 N.E.2d 859, 861–62 (N.Y.1975) ("[§] 3213 is intended to provide a speedy and effective means of securing a judgment on claims presumptively meritorious. In the actions to which it applies, 'a formal complaint is superfluous, and even the delay incident upon waiting for an answer and then moving for summary judgment is needless' ") (quoting FIRST PRELIMINARY REPORT OF ADVISORY COMMITTEE ON PRACTICE AND PROCEDURE, N.Y.Legis.Doc.1957, No. 6[b], p. 91). The Pressmans need only file answering papers for the § 3213 motion to be ripe for adjudication. *See* N.Y.Civ.Prac.L. & R. § 3213. Although their services are apparently integral to the debtors' operations, given the limited response to the § 3213 motion, coupled with IOA's agreement not to seek discovery in

that action pending resolution of the motion, we are unpersuaded that adjudication of that motion will divert them from their duties or impose a financial hardship on these estates. Plaintiffs and the Pressmans have not shown as much.

If the State Court denies IOA's motion, "the moving and answering papers shall be deemed the complaint and answer, respectively, unless the court orders otherwise." *Id.* The litigation likely would then go on in the normal course with the parties taking discovery as provided under the N.Y.Civ. Prac.L. & R. At that point continued prosecution of the State Court Action might adversely impact debtors and their estates such that a § 105 injunction of that litigation would be appropriate. We leave open plaintiffs' right to seek such relief upon the State Court's resolution of the summary judgment motion.

The Pressmans have not threatened to resign from the debtors if the State Court Action goes forward, and have not pledged any of their assets to the debtors for use in their chapter 11 plan(s) of reorganization. In that light, the cases cited by plaintiffs in their reply memorandum are inapposite, especially given the limited extent of our ruling herein. *See In re Third Eighty–Ninth Associates,* 138 B.R. at 146; *Codfish Corp. v. FDIC (In re Codfish Corp.),* 97 B.R. 132 (Bankr.D.P.R.1988); *Kasual Kreation, Inc. v. Heller Financial, Inc. (In re Kasual Kreation, Inc.),* 54 B.R. 915 (Bankr.S.D.Fla.1985).

Plaintiffs argue that continued prosecution of the State Court Action will impede the reorganization process by interfering with our administration of debtors' estates, including the court authorized mediation. Courts issue § 105 injunctions when they find that litigation against a non-debtor will defeat or impair their jurisdiction of the underlying bankruptcy cases. *Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.),* 111 B.R. 423, 431 (Bankr.S.D.N.Y.1990), *aff'd in part,* 124 B.R. 635 (S.D.N.Y.1991); *LTV Steel Co., Inc. v. Board of Education (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y. 1988). The mediation herein is non-binding and without prejudice to the parties' rights in the State Court Action. *See* Mediation Procedures Order ¶¶ 3.3, 5.1 and 5.2. Although we believe that a cost effective and expeditious resolution of the serious issues confronting the parties can be achieved through mediation, there is no reason the State Court should not adjudicate the merits of the summary judgment motion.

■ Plaintiffs also contend that because they filed the Bankruptcy Complaint before defendants' commenced the State Court Action, the "first-filed" rule mandates that we enjoin that litigation. That rule operates only when two actions are pending with "identical or substantially similar parties and claims." *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 116–17 (2d Cir.1992). Courts apply it on a case by case basis. *See National Patent Development Corp. v. American Hospital Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984) (technical positions about first-filed rule "must yield to the realities of the situation in terms of the interests of the parties and effective and sound judicial administration"). The Pressmans are not named plaintiffs in the Bankruptcy Complaint. That complaint does not seek relief with respect to the Personal Guarantees. That IOA, subsequent to commencing the State Court Action, asserted counterclaims to the Bankruptcy Complaint raising issues concerning the enforceability of certain agreements related to the Personal Guarantees, does not mean that the issues to be adjudicated in this court are identical or substantially similar to those being litigated in the State Court Action. The litigation is not enjoined under the "first-filed" rule.

■ Plaintiffs argue that a § 105 injunction should issue because judgment in IOA's favor may create a large unsecured claim herein since under the law of subrogation the Pressmans can look to debtors to recover amounts they pay to IOA. The doctrine of equitable subrogation gives a guarantor the right to be subrogated to any and all rights that a creditor or subrogor has against a debtor. *See Natwest USA Credit Corp. v. Alco Standard Corp.,* 858 F.Supp. 401, 414 (S.D.N.Y.1994) (citing *Thornton v. Syracuse Savings Bank,* 961 F.2d 1042, 1046–47 (2d Cir.1992)); *see also* 63 N.Y.JUR.2D *Guarantee and Suretyship* § 428, at p. 566 (1987). That

includes the right to assert any priority or special right of the subrogor. *See Pandora Ind., Inc. v. Paramount Communications, Inc. (In re Wingspread Corp.),* 145 B.R. 784, 791 (S.D.N.Y.1992), *aff'd,* 992 F.2d 319 (2d Cir.1993). Thus, even assuming, *arguendo,* IOA gets a summary judgment award in the State Court Action, the Pressmans cannot assert greater rights against debtors than IOA could have done. Debtors may raise the same claims or defenses against the Pressmans that they could have raised against IOA in contesting the validity or enforceability of IOA's direct claims. *Fisher v. Outlet Co. (In re Denby Stores, Inc.),* 86 B.R. 768, 781 (Bankr.S.D.N.Y.1988); *Hartford Accident and Indemnity Co. v. Moraldo,* 84 Misc.2d 1082, 1086, 375 N.Y.S.2d 973 (2d Dist.1975). In any event, the substitution of the Pressmans for IOA is no basis for imposing a § 105 injunction here. *See In re Brentano's Inc.,* 36 B.R. 90, 92 (S.D.N.Y.1984).

■ Subrogation is the "substitution of one person in place of another with reference to some lawful claim or right". 63 N.Y.JUR.2D *Guaranty and Suretyship* § 428, p. 566 (1987). It arises from principles of equity rather than any mutual contractual relationship between the parties. *Id.* By contrast, indemnification is the "practice by which corporations pay expenses of officers and directors who are named as defendants in litigation relating to corporate affairs." BLACK'S LAW DICTIONARY 769 (6th ed. 1990). It is a remedy created by contract or statute. The Pressmans' subrogation claim is distinguishable from any indemnification claim they may have against the debtors. Thus, the cases cited by plaintiffs in which courts have issued § 105 injunctions in favor of non-debtor indemnitees are irrelevant. *See A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *North Star Contracting Corp. v. McSpedon (In re North Star Contracting Corp.),* 125 B.R. 368 (S.D.N.Y.1991).

Plaintiffs argue that it is unfair to subject the Pressmans to potential injustice of inconsistent and conflicting judgments in the State Court and this court, which will place the economic burden of the Preen Loans solely on them individually, rather than on the business enterprises which actually received IOA's financing, and that the Pressmans will be emotionally distressed by the specter of an enormous judgment hanging over their heads that they cannot possibly satisfy. That is no basis for depriving IOA of its contractually bargained for right to seek payment from the Pressmans as guarantors. Moreover, there is no evidence that the Pressmans cannot satisfy their guarantees. Even if that is the case, they assumed that risk when they executed the guarantees.

■ Bankruptcy Rule 9011 provides for sanctions against an attorney who signs a pleading that contains misstatements of fact that the attorney knew were untrue or after reasonable inquiry would have learned were untrue, or for which there is no cause of action based on existing law and no reasonable extension or distinction of existing law would serve as a basis for the cause of action. The rule tracks the language of Fed.R.Civ.P. 11, as it existed before its amendment effective December 31, 1993. Accordingly, in interpreting it, the case law developed under former Rule 11 is instructive. *See, e.g., Baker v. Latham Sparrowbush Assocs. (In re Cohoes Industrial Terminal, Inc.),* 931 F.2d 222, 227 (2d Cir.1991); *In re Food Workshop, Inc.,* 70 B.R. 962, 966 (Bankr.S.D.N.Y.1987). Sanctions are not appropriate in this matter.

### Conclusion

Based on the foregoing, we deny plaintiffs' motion without prejudice and deny IOA's request for sanctions.

SETTLE ORDER.