**In re RAYMARK INDUSTRIES, INC., Debtor.**

**In re Raymark Corporation, Debtor.**

**Laureen M. Ryan, as Trustee of Raymark Industries, Inc. and Raymark Corporation; Raytech Corporation; and Official Committee of Unsecured Creditors of Raytech Corporation, Plaintiffs,**

**v.**

**Craig R. Smith, individually and as trustee of the Stratford Trust; Bradley C. Smith, individually and as trustee of Raymark Industries, Inc. Irrevocable Retiree Benefit Plans Trust Agreement; James F. Cobb; Diann K. Smith; Sherry**

**Smith; Sharee Wood; John F. Lynn; Calvin E. Thorpe; R.E. Laukhuff; James Worthington; Universal Friction Composites, Inc.; Investors International, Inc.; Carolina Investors, Inc.; Engineered Friction Materials, Inc.; Ferotec Limited; Ferotec Friction Dynamics, Limited; and FDL USA; Defendants.**

Bankruptcy Nos. 98–51532, 98–51540.
Adv. No. 98–5111.

United States Bankruptcy Court,
D. Connecticut.

Jan. 15, 1999.

---

James G. Green, Jr., Pepe & Hazard, Hartford, CT, for plaintiff Laureen M. Ryan.

Brian M. Cogan, Stroock & Stroock & Lavan LLP, New York City, Elizabeth J. Austin, Pullman & Comley, LLC, Bridgeport, CT, for plaintiff Raytech Corp.

Trevor W. Swett III, Caplin & Drysdale, Chartered, Washington, D.C., for plaintiff Official Creditors' Committee.

Peter M. Nolin, Gregory W. Nye, Hebb & Gitlin, Hartford, CT, for defendants Craig R. Smith and Bradley C. Smith, individually and in their capacities as trustees, and James Cobb.

Dean W. Baker, Law Offices of Dean W. Baker, New Haven, CT, for individual defendants Diann K. Smith, Sherry Smith, Sherry Wood, and corporate defendants III, FDL USA, FDL UK and Ferotec, Ltd.

Brendan J. O'Rourke, O'Rourke, O'Hanlan & Zimmermann, New Canaan, CT, for corporate defendant UFC.

Irve J. Goldman, Jacobs Goldman LLC, Norwalk, CT, for individual defendants John F. Lynn, Calvin E. Thorpe, and R.E. Laukhuff.

Julie A. Manning, Shipman & Goodwin, L.L.P., Hartford, CT, for corporate defendant Carolina Investors and its subsidiaries.

Carl T. Gulliver, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Robert F. Carter, Guardian Ad Litem for Future Claimants.

Richard D. Zeisler, Zeisler & Zeisler, Bridgeport, CT, for Equity Security Holders Committee.

Deirdre A. Martini, United States Attorneys Office, Bridgeport, CT, for the United States Environmental Protection Agency.

ALAN H. W. SHIFF, Chief Judge.

## SIXTH MODIFIED TEMPORARY RESTRAINING ORDER

WHEREAS, on December 8, 1998, the plaintiffs commenced this adversary proceeding to recover damages in excess of $50,000,-000 based upon, *inter alia*, the defendants' alleged fraud, breach of fiduciary duty, breach of contract, conversion, and unjust enrichment. The 14 count complaint seeks, in addition to money damages, *inter alia*, the turnover of assets held by the defendants which allegedly belong to the Raymark estates. *See Complaint, Count VI*; and

WHEREAS, on December 8, 1998, the plaintiffs filed an *ex parte* application to enjoin Craig R. Smith, the former CEO of Raytech, and the other named defendants from

> dissipating, transferring, assigning, conveying, encumbering, selling, or otherwise disposing of or alienating any assets whatsoever, including but not limited to, bank accounts, automobiles, stocks, bonds, and real property in which any Defendant has an interest, except to the extent that portions of such assets are necessary (i) for the support of any individual Defendant's immediate family ... or (ii) for transactions in the ordinary course of business of defendant Friction Dynamics, Limited ... without leave of this Court....

*Plaintiffs' Proposed Temporary Restraining Order* at 2–3; and

WHEREAS, the corresponding December 8, 1998 temporary restraining order specifi-cally found that "there is a substantial likelihood that the Defendants ... will dissipate, transfer, or conceal assets presently in their possession for the purpose of defeating the lawful claims of creditors including Plaintiffs ..." which would cause the plaintiffs irreparable injury and leave them without any adequate remedy at law, *December 8, 1998 Temporary Restraining Order* at 2, and corresponding orders granted the plaintiffs' applications for a writ of attachment and prejudgment remedy; and

WHEREAS, on December 22, 1998, this court made a preliminary determination that the hearing on the application would be consolidated with a trial on the merits, *see* Rule 65(a)(2), F.R.Civ.P., made applicable to bankruptcy by Rule 7065, F.R.Bankr.P. *Modified Temporary Restraining Order* at 2–3. On December 30, defendants Craig Smith, Bradley Smith, and James Cobb objected to consolidation and filed a motion to withdraw the reference on the basis of their jury demand and unwillingness to consent to a trial before the bankruptcy judge. *See* 28 U.S.C. § 157(e). They further filed a motion requesting a stay of this adversary proceeding pending the District Court's determination of their motion to withdraw the reference. *See* Rule 5011(a), F.R.Bankr.P. The plaintiffs have opposed the withdrawal motion; and

WHEREAS, the temporary restraining order entered on December 8 was modified on December 22, 1998 to permit the release of funds for personal expenses, corporate operating expenses, and the retention of counsel, subject to further modification upon application to the court; and

WHEREAS, this Court entered a Second Modified Temporary Restraining Order on December 28, 1998, in the above-captioned Adversary Proceeding to permit an increase in the budget allowance for defendant Universal Friction Composites; and

WHEREAS, the Second Modified Temporary Restraining Order was to terminate at 5:00 p.m. on January 7, 1999; and

WHEREAS, a stipulated Third Modified Temporary Restraining Order entered on January 6, 1999, which permitted the assign-

ment of property from Universal Friction Composites, Inc. to Friction Material Company, Inc.; and

WHEREAS, 11 U.S.C. § 105(a) provides: The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process;

and

█ WHEREAS, a bankruptcy court's injunctive powers under § 105(a) allow it to enjoin activities that might "impede the reorganization process," *see MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 93–94 (2nd Cir.1988) (upholding court's use of § 105(a) against non-debtors to preserve property of the estate); *In re Rubenstein*, 105 B.R. 198, 203 (Bankr.D.Conn.1989), or that will "defeat or impair the jurisdiction of [the] underlying bankruptcy case." *Barney's, Inc. v. Isetan Company Limited (In re Barney's, Inc.)*, 200 B.R. 527, 533 (S.D.N.Y. 1996). *See also, LTV Corp. v. Miller (In re Chateaugay Corp.)*, 109 B.R. 613, 621 (S.D.N.Y.1990); and

WHEREAS, a Fourth Modified Temporary Restraining Order entered on January 7, 1999 which extended the Third Modified Temporary Restraining Order, pursuant to 11 U.S.C. § 105(a), for the purpose of maintaining the status quo until January 13, 1999; and

WHEREAS, a Fifth Modified Temporary Restraining Order entered on January 13, 1999 which extended the Fourth Modified Temporary Restraining Order, pursuant to 11 U.S.C. § 105(a), for the purpose of maintaining the status quo until January 15, 1999; and

WHEREAS, it is determined that unless an order enters preserving the status quo until further action is taken by the District Court on the motion to withdraw the reference, there is a substantial risk that this court's jurisdiction over the administration of these cases will be impeded by the transfer and dissipation of assets in which the Raymark debtors' estates assert an interest.

NOW THEREFORE, IT IS HEREBY ORDERED that

█ 1. Pursuant to 11 U.S.C. § 105(a), the Fifth Temporary Restraining Order is restated in its entirety as the Sixth Modified Temporary Restraining Order ("Sixth TRO") except as expressly modified herein.

2. Unless otherwise ordered by the District Court, the Sixth TRO shall continue in effect until 5:00 p.m. on February 5, 1999, and the court shall conduct a hearing on January 27, 1999 at 10:00 a.m. (the "Hearing Date") to consider any requests for modifications of the restraining provisions of this Sixth TRO and any further allowances to the defendants, including allowances for attorneys' fees. Any such requests shall be filed and served upon all parties to the adversary proceeding no later than January 22, 1999 together with a certification of service. Two courtesy copies shall be delivered to chambers on the date served. The request shall contain a short statement of each proposed change together with the reason for the modification and any documentary support thereof.

3. The individual defendants (Craig R. Smith, Bradley C. Smith, James F. Cobb, Diann K. Smith, Sherry Smith, Sharee Wood, John F. Lynn, Calvin E. Thorpe, R.E. Laukhuff and James Worthington, hereinafter the "Individual Defendants") are hereby enjoined, directly or indirectly, from transferring, assigning, conveying, encumbering, selling or otherwise disposing of or alienating any property (including, but not limited to, cash, securities, and real property) except as expressly stated herein.

4. Defendants Sheree Wood, Sherry Smith, Diann K. Smith, and James Worthington are each authorized to spend up to $7,500 in the aggregate for ordinary living expenses and for reasonable attorney fees necessitated by this adversary proceeding during the period from January 7, 1999 through and including February 5, 1999.

Defendants Craig Smith are Bradley Smith are each authorized to spend up to $7,500 for ordinary living expenses less any part of that sum spent by their wives.

Defendant James Cobb is authorized to spend up to $7,500 for ordinary living expenses.

Defendants Craig Smith, Bradley Smith, and James Cobb are further each authorized to spend up to $7,500 for reasonable attorney fees necessitated by this adversary proceeding during the period from January 7, 1999 through and including February 5, 1999.

Defendants R.E. Laukhuff, John F. Lynn, and Calvin E. Thorpe are each authorized to spend up to $7,500 for ordinary living expenses and up to $5,000 for reasonable attorney fees necessitated by this adversary proceeding during the period from January 7, 1999 through and including February 5, 1999.

5. The defendant Calvin Thorpe may spend up to $25,000 for the payment of estimated income taxes due for the third and fourth quarters of 1998, up to $4,000 for dental work, and up to $1,500 for the tuition of his son.

6. Any Individual Defendant may file and serve upon the plaintiff, Laureen M. Ryan as Trustee ("Trustee") and upon all other parties, with two courtesy copies to chambers, an application for emergency interim relief from this Sixth TRO for a specific purpose based on a showing of extraordinary need. In the absence of an objection by the Trustee, filed and served upon the applicant at least two days before the proposed relief, the application may be granted by the court without a hearing. If the Trustee timely objects to the application, the court will conduct a hearing on notice no sooner than two days after the application is filed. The hearing may be conducted telephonically if the circumstances warrant.

7. Except as expressly stated herein, Universal Friction Composites, Inc. ("UFC"); Investors International, Inc. ("III"); Ferotec Limited; Friction Dynamics, Limited ("FDL UK"); FDL USA; Carolina Investors, Inc.; Comptech Solutions, Inc.; American Friction Products, Inc. ("AFP"); and Engineered Friction Materials, Inc., ("EFM") (the "Corporate Defendants") are enjoined directly, indirectly, or through inter-defendant transactions, from encumbering, transferring, assigning, alienating, conveying, refinancing, or effectuating any other disposition of any real, personal, or intangible property, including but not limited to customer lists, corporate opportunities, or contract rights, without filing and delivering to the Trustee at least five days before the proposed encumbrance or transfer ("Notice Period") a detailed statement of the proposal ("Proposal").

In the absence of an objection by the Trustee within the Notice Period, which is filed and delivered to the Corporate Defendant which initiated the Proposal, the proposed encumbrance or transfer may be transacted without a hearing. If the Trustee timely objects, the court will conduct a hearing on no less than two days' notice. The hearing may be conducted telephonically if the circumstances so warrant.

8. Each Corporate Defendant is restrained from reorganizing, dissolving, merging or otherwise modifying its current legal existence. Each Corporate Defendant is restrained from declaring or paying any dividend and from distributing any property with respect to any security.

9. Each Corporate Defendant is authorized to spend up to the amounts that follow for requested operating expenses and attorneys' fees necessitated by this adversary proceeding for the period from January 7, 1999, through and including February 5, 1999:

(a) UFC: $111,813 operating expense
$20,000 attorneys' fees

Notwithstanding ¶ 12, the operating expense includes a requested salary increase to R.E. Laukhuff. The authorized amount is based upon a Projected January 1999 Operating Budget Expenses report which was provided at the January 8, 1999 hearing. The authorized amount is conditioned upon the following: the $20,000 projected for vendor payments shall be applied only to bills pertaining to Raymark's Manheim, PA property; and as a condition of receiving their salary, UFC employees R.E. Laukhuff and Elaine Gantz shall fully cooperate in performing their usual services with respect to the Raymark Pension, Retiree and other

benefit plans. R.E. Laukuff will have exclusive expenditure authority.

UFC is further authorized to spend up to $20,000 for attorneys' fees from January 7, 1999 through February 5, 1999.

(b) III: $25,000    operating expense
$10,000    attorneys' fees

The operating expense is based on III's December 21, 1998 letter to chambers itemizing its monthly expenses.

III is further authorized to spend up to $10,000 for attorneys' fees from January 7, 1999 through February 5, 1999.

(c) Ferotec, Limited: $0    operating expense
$10,000    attorneys' fee

Ferotec has made no request for an operating expense allowance. It is authorized to spend up to $10,000 for attorneys' fees from January 7, 1999 through February 5, 1999.

(d) FDL UK: £1,178,000    operating expense
$10,000    attorneys' fees.

The authorized operating expense represents one-third of its 90–day projection of expenses, *see* Craig Smith Exh. D.

FDL UK is further authorized to spend up to $10,000 for attorneys' fees from January 7, 1999 through February 5, 1999.

(d) FDL USA: $645,000    operating expense
$10,000    attorneys' fees

The authorized operating expense represents its 30–day projection of expenses, *see* Craig Smith Exh. E, which excludes the $82,-000 for Replacement Check Payments which was previously approved.

FDL USA is further authorized to spend up to $10,000 for attorneys' fees from January 7, 1999 through February 5, 1999.

(f) Carolina Investors Inc., Comptech Solutions, Inc., AFP and EFM:

$622,623    operating expense
$40,000    attorneys' fees

The operating expense for the Carolina group is base upon the Projected Cash Needs report, which was submitted at the January 8, 1999 hearing. Blaine Lowry will have exclusive expenditure authority.

The four defendants in the Carolina group are each authorized to spend up to $10,000 for attorneys' fees from January 7, 1999 through February 5, 1999.

10. The amounts set forth in ¶ 9 are not cumulative of any amounts set forth in prior temporary restraining orders. If a defendant did not disburse a portion of the amounts previously allowed, those unspent amounts shall not be added to the amounts allowed in this Sixth TRO.

11. Each Corporate Defendant is permitted in the ordinary course of its business to continue to sell its inventory and collect all consideration due for such sales on its normal customary terms.

Each Corporate Defendant is permitted to negotiate and deposit into their bank accounts, *see also* ¶ 22, any checks received from accounts receivable or third party obligors, provided, however that all checks payable to Raymark Industries, Inc. shall be turned over promptly to the Trustee.

12. Each Corporate Defendant is authorized to pay wages and salaries, income and FICA tax obligations, health, and severance obligations to individual and former employees, except that as to the Individual Defendants or individuals related to them, such payments shall be consistent in basis and amount with their salary, health or severance arrangements as they existed on June 30, 1998.

13. Notwithstanding anything herein to the contrary, defendants FDL UK and FDL USA shall mark the list of equipment, itemized on Craig Smith Exhibit B, they claim they purchased but is still located at Raymark's premises in Manheim, PA. Those defendants shall provide the marked list to the Trustee, with proof of payment as to each item. The Trustee shall grant the defendants access to the premises at Manheim for the purposes of arranging the shipment of the specified items to FDL UK and FL USA. Without prejudice to plaintiffs' claims, such equipment may be shipped to the FDL UK's factory in Wales or to the premises of FDL USA in Mount Joy, PA and may be used in the operations of FDL UK and FDL USA, but in all other respects shall remain subject to the restriction imposed by this Sixth TRO.

14. Pursuant to this court's verbal directive, the Trustee provided R.E. Laukhuff (as a representative of UFC) access to Ray-

mark's Manheim, PA facility on January 11, 1999, for the purpose of identifying and listing records and other items, if any, that UFC claims to be its property. A copy of such list shall be provided to the Trustee. If the Trustee and UFC cannot agree on the disposition of any listed items, either may apply in writing to the court for a ruling.

15. The Trustee shall allow a representative of Comptech Solutions, Inc. ("Comptech") to have access to Buildings # 4, 44, 49, and 55 at the Manheim, PA complex on January 18, 1999, to allow Competech to: (i) locate and identify all equipment, machinery, records, and other assets of Comptech, including but not limited to all dynamometers, ovens, saws, presses, test vehicles, laboratory equipment, library materials, files and records, and any other items Comptech claims to be its property (the "Alleged Comptech Assets"); and (ii) prepare a list of such claimed assets to the Trustee in order to remove the Alleged Comptech Assets from the Manheim, PA complex unless otherwise agreed to by the Trustee and Comptech. If the Trustee and Comptech cannot agree on the disposition of any listed items, either may apply in writing to the court for a ruling. The court will conduct a hearing no sooner than two days after any such application is filed.

16. The Trustee shall allow a representative of EFM to have access to Building # 74 at the Manheim, PA complex on January 18, 1999, to allow EFM to: (i) locate and identify all equipment, machinery, records, and other assets of Comptech, including but not limited to all industrial friction products, finished materials or raw materials that EFM claims to be its property (the "Alleged EFM Assets"); and (ii) prepare a list of such claimed assets to the Trustee in order to remove the Alleged EFM Assets from the Manheim, PA complex unless otherwise agreed to by the Trustee and EFM. If the Trustee and EFM cannot agree on the disposition of any listed items, either may apply in writing to the court for a ruling. The court will conduct a hearing no sooner than two days after any such application is filed.

17. The Trustee or her designated representative shall be entitled on a daily basis to accompany the representative of UFC for the purpose of retrieving, opening, and reviewing mail addressed to UFC. The following categories of mail shall be handled as directed below:

(a) Any checks made payable to Raymark Industries shall be turned over immediately to the Trustee.

(b) Any check made payable to UFC for rentals or expenses relating to third-party leases of Raymark's Manheim property shall be deposited into an escrow account, subject to the joint signature authority of the Trustee and UFC pending a determination in this Adversary Proceeding as to the ownership of such funds.

(c) Any checks for premiums owed pursuant to Raymark's Retirement Benefit Plans shall be turned over immediately to the Trustee.

(d) Any bills, invoices or correspondence relating to Raymark's Manheim property, the Retirement Trust, or the Raymark Retierment Benefit Plan or Pension Plans shall be copied immediately and either the copies or originals turned over to the Trustee.

(e) The parties shall promptly contact the court if they are unable to reach agreement on the disposition of any item pursuant to this paragraph.

18. The Trustee shall file and serve upon FDL UK the report of the solvency practitioner in the United Kingdom who has been monitoring FDL UK.

19. The Trustee is hereby authorized to monitor the operations of the Corporate Defendants as follows:

(a) Upon two business days' notice, each Corporate Defendant shall permit the Trustee or her designated representative to inspect its books and records from December 8, 1998 forward, including financial statements, general ledgers, subsidiary ledgers, check registers, budgets, projections and supporting documentation of transactions reflected therein. As to each Corporate Defendant, the Trustee may exercise this inspection authority twice dur-

ing the period covered by this Sixth TRO.

(b) On January 22, 1999, each Corporate Defendant shall file and serve upon the Trustee an affidavit of its chief financial officer setting forth its actual and projected cash disbursements for the period covered by this Sixth TRO, which affidavit shall identify the account(s) from which such disbursements are made, and shall identify the payees of such disbursements, the amounts disbursed to each payee, the method of payment, and the purpose of each disbursement.

(c) On January 22, 1999, each Corporate Defendant shall file and serve upon the Trustee an affidavit of its chief financial officer projecting its cash disbursements on a monthly basis for February, March, and April 1999 and explaining the basis for its projections, calling attention to any significant expected changes in its operations.

(d) If the Trustee determines that an inquiry is necessary to clarify the statements asserted in any affidavit, such Corporate Defendant shall, on two business days' notice, make available for interview a person with knowledge of the areas of inquiry identified by the Trustee. Any interviews carried out pursuant to this authority shall be limited to a period of three hours, absent agreement of the parties or further order of the court.

20. Any Corporate Defendant may file and deliver to the Trustee, with two courtesy copies to chambers, an application for emergency interim relief from any of the terms of this Sixth TRO for a specific purpose based on a showing of extraordinary need. In the absence of an objection by the Trustee, filed and delivered to the applicant within five days before the proposed relief, the application may be granted by the court without a hearing. If the Trustee timely objects, the court will conduct a hearing no sooner than two days after the application is filed.

21. Each defendant is restrained from causing the Raymark Industries, Inc. Irrevocable Retirement Benefit Plans Trust (the "Retirement Trust") or the Stratford Trust to pay any sum directly or indirectly to any Defendant. Fees to Epitome for the administration of retirement benefits may be paid as and when due (but not otherwise) from the assets presently held by the Retirement Trust, provided, however, that no sums may be paid to defendants Bradley Smith, R.E. Laukhuff, or any other person by way of compensation for purported services to such trust.

22. With the exception of III and FDL USA, each Corporate Defendant may designate one bank account to be maintained by such defendant outside of the State of Connecticut (the "Designated Account"). Such defendant may transfer from the Designated Account an amount not to exceed the limits provided herein into one new account maintained at the same institution, which new account shall not be subject to the restraints provided for herein.

III and FDL USA shall establish a Designated Account.

UFC, Carolina Investors, Inc., Comptec, AFP, and EFM are not required to establish a Designated Account.

FDL UK may implement its obligations under this paragraph in the manner set forth in the form of the letter agreement submitted to the court on January 15, 1999.

23. Nothing in this Sixth TRO shall prevent any defendant from paying any obligation owed to Raytech Corp., Raymark Industries, Inc., or Raymark Corporation, any amount owed with respect to real estate taxes, utilities, insurance, or brokerage commissions pertaining to the Manheim, PA property of Raymark Industries, Inc.

24. No postal service shall be in any way subject to or enjoined by this Sixth TRO. Plaintiffs shall serve this Sixth TRO on any postal service previously served with prior temporary restraining orders entered in this case.

25. Plaintiffs shall serve this Sixth TRO on all banking institutions who were served a copy of any prior temporary restraining orders entered in this adversary proceeding.

**532**

No banking institution is restrained by this Sixth TRO with respect to the accounts of UFC, FDL UK, Carolina Investors, Inc., Comptec, AFP, and EFM.

No banking institution is restrained by this Sixth TRO with respect to the Designated Account, *see* ¶ 22, established by III and FDL USA.

26. With the exception of any future modification of this Sixth TRO, provided the District Court does not order otherwise, the adversary proceeding is stayed pending direction from the District Court.